IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:14-CV-93-FL

| | | |
|---|---|---|
| BRENDA F. DOZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Brenda F. Dozier ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 18, 24). Both filed memoranda in support of their respective motions (D.E. 19, 25), and plaintiff filed a reply (D.E. 27). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 1st unnumbered public D.E. after D.E. 25). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

I.  BACKGROUND

   A.  Case History

Plaintiff filed an application for DIB on 9 June 2011 alleging the onset of disability on 23 December 2008. Transcript of Proceedings ("Tr.") 14. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 14. On 29 November 2012,

a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. Tr. 27-70. The ALJ issued a decision denying plaintiff's claim on 25 January 2013. Tr. 14-22. Plaintiff timely requested review by the Appeals Council. Tr. 7. The Appeals Council denied the request on 21 March 2014. Tr. 1-3. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 22 May 2014, pursuant to 42 U.S.C. § 405(g). *(See In Forma Pauperis* ("IFP") Mot. (D.E. 3); Order Allowing IFP Mot. (D.E. 5); Compl. (D.E. 6)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

2

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

3
Case 4:14-cv-00093-FL   Document 28   Filed 05/26/15   Page 3 of 17

## C. Findings of the ALJ

Plaintiff was 46 years old on the alleged onset date of disability and 50 years old on the date of the hearing. *See* Tr. 20 ¶ 7. The ALJ found that she had at least a high school education (Tr. 20 ¶ 8), and she testified that she had a two-year Associate's degree in service and technology (Tr. 30-31). She had past relevant work as a correctional officer and certified nurse's assistant. Tr. 20 ¶ 6. The record indicates that plaintiff reported injuring her back on the alleged date of onset of disability, 23 December 2008, while working as a correctional officer by lifting a heavy ice cooler. *See* Tr. 18 ¶ 5; 41. She had back surgery in October 2009. Tr. 18 ¶ 5.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. Tr. 16 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairment that was severe within the meaning of the Regulations: degenerative disc disease. Tr. 16 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings. Tr. 16 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of work at the light exertional level.[1] Tr. 17 ¶ 5; *see* 20 C.F.R. § 404.1567(b). The ALJ imposed the

---

[1] Title 20, C.F.R. § 404.1567(b) defines "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); *see also Dictionary of Occupational Titles* ("DOT"), app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http:// www.oalj.dol.gov/libdot.htm (last visited 26 May 2015). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

4

exertional limitation that plaintiff "should alternate between sitting and standing every 30 minutes." Tr. 17 ¶ 5; *see* 20 C.F.R. § 404.1569a(a) (defining exertional limitation as those that "affect [a claimant's] ability to meet the strength demands of jobs"). She also imposed the following nonexertional limitations: "She can occasionally engage in postural activities. She should avoid concentrated exposure to vibration and work place hazards." Tr. 17 ¶ 5; *see* 20 C.F.R. § 404.1569a(a) and (b) (defining nonexertional limitations as those that "affect [a claimant's] ability to meet the demands of jobs other than the strength demands," including difficulty performing postural functions such as stooping, climbing, crawling, and crouching).

At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 20 ¶ 6. At step five, the ALJ accepted the testimony of the VE at the hearing and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of mail clerk, general office helper, and routing clerk. Tr. 21 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 21 ¶ 11.

### D.   Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff argues that the ALJ's decision should be reversed and benefits awarded or the case remanded for a new hearing on the principal grounds that the ALJ erred by improperly: (1) finding plaintiff not to be fully credible; (2) assessing her RFC; and (3) relying on VE testimony based on incomplete hypotheticals. The court begins its analysis with the ALJ's hypotheticals and then turns to the other areas.

## III. ALJ'S HYPOTHETICALS TO THE VE

The ALJ elicited the testimony of the VE upon which she relied through two hypotheticals. The first hypothetical was:

> [A]ssume an individual who's a younger individual, who has a high-school education and work experience consistent with the claimant's past relevant work. Assume further that this individual could lift and carry up to 20 pounds occasionally and 10 pounds frequently. This person could sit, stand, and walk for at least six hours each during a typical eight-hour work day, but would need to be able to alternate sitting and standing at hour intervals. This person could occasionally engage in postural activities, and this person should avoid concentrated exposure to vibration, and also, concentrated exposure to hazards.

Tr. 65. In response, the VE stated that plaintiff could not do her past relevant work, but could do work in the other occupations previously noted: mail clerk, general office helper, and routing clerk. Tr. 65-66.

In her second hypothetical, the ALJ reduced the interval for the sit/stand option to half an hour: "[A]ssume the facts of hypothetical number one, but this person would need to alternate sitting and standing at 30-minute intervals." Tr. 66. The VE responded that the change would reduce the available jobs in the foregoing occupations by about 10 to 15 percent. Tr. 67.

Plaintiff argues that the hypotheticals were improper because they did not adequately reflect her RFC. A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

One error she alleges is that the hypotheticals placed her in the wrong age category. The Regulations establish three age categories: younger, 18 to 49 years; closely approaching advanced age, 50 to 54 years; and advanced age, 55 years or more. 20 C.F.R. § 404.1563(c)-(e). Plaintiff was born on 10 April 1962. Tr. 20 ¶ 7. Therefore, she was in the younger category from the alleged onset of disability on 23 December 2008 until 9 April 2012—a period of approximately three years and three and a half months. She was in the closely-approaching-

advanced-age category from 10 April 2012 through the date of the ALJ's decision, 25 January 2013—a period of about nine and a half months. As noted, the hypotheticals upon which the ALJ relied placed plaintiff in the younger category. The ALJ never asked the VE about the availability of jobs to a hypothetical person like plaintiff in the closely-approaching-advanced-age category. The ALJ's failure to do so was reversible error.

At step five of the sequential analysis, the burden rests on the Commissioner to show that there are no other jobs in the national economy existing in significant numbers that plaintiff could perform. *Pass*, 65 F.3d at 1203; 20 C.F.R. §§ 404.1520(a)(4)(v), .1560(e). The Commissioner can satisfy this burden by relying on the Medical-Vocational Guidelines ("Grids") or the testimony of a VE. *See id.* §§ 404.1566(e), .1569; *Airstrop v. Barnhart*, 35 Fed. Appx. 145, 146 (4th Cir. 2002). The *Airstrop* court explained:

> The Grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely exertional impairments. In the case of a claimant who suffers from nonexertional impairments, or a combination of exertional and nonexertional impairments that prevent her from performing a full range of work at a given exertional level, the Grids may be used only as a guide. In such a case, the Commissioner must prove through expert vocational testimony that jobs exist in the national economy which the claimant can perform. 20 C.F.R. § 404.1569a (2001); *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989).

36 Fed. Appx. at 146-47.

Here, of course, plaintiff suffered from a combination of exertional and nonexertional impairments. The ALJ therefore could use the Grids only as a guideline and was required to obtain the testimony of a VE. She, however, failed to obtain VE testimony establishing the availability of jobs to plaintiff at the time of her decision or the approximately nine-and-a-half-month period preceding it. This failure left unsatisfied the Commissioner's burden at step five. The court cannot properly speculate as to what the VE's testimony would have been and satisfy the Commissioner's burden for her.

The Commissioner argues that the ALJ did not err because plaintiff was in the younger category for the majority of the time between the date of her alleged onset of disability and the date of the ALJ's decision. The Regulations, though, require that the Commissioner "use each of the age categories that applies to [the claimant] during the period for which [the Commissioner] must determine if [the claimant] [is] disabled." 20 C.F.R. § 404.1563(b). They view advancing age as "an increasingly limiting factor in the person's ability to make . . . an adjustment [to other work]." *Id.* § 404.1563(a). In particular, the Regulations provide that "[i]f you are closely approaching advanced age (age 50-54), [the Commissioner] will consider that your age along with a severe impairment(s) and limited working experience may seriously affect your ability to adjust to other work." *Id.* § 404.1563(c). Thus, the fact that, according to the VE, jobs were available to a hypothetical person in the younger category purportedly having plaintiff's salient characteristics does not necessarily signify that jobs would be available to such a person in the closely-approaching-advanced-age category. In other words, the Commissioner did not satisfy her burden with respect to the availability of jobs to plaintiff when in the closely-approaching-advanced-age category by the VE testimony that jobs were available to her when in the younger category.

The ALJ did expressly discuss plaintiff's movement to the older age category during the alleged period of disability. Tr. 20 ¶ 7. She also references as guidelines Grid rules in both categories—Rules 202.14 (closely approaching advanced age) and 202.21 (younger). *See* Tr. 21 ¶ 10. Her recognition of the age category change makes her failure to elicit VE testimony with respect to the closely-approaching-advanced-age category particularly curious. Certainly the fact that she considered the transition is no substitute for the required VE testimony. The failure of the Commissioner to meet her burden at step five requires that this case be remanded.

The other challenge by plaintiff to the ALJ's hypotheticals is that they do not reflect her purported need to lie down about half the time during an average day. *See* Tr. 59. The ALJ's decision makes clear that her determination regarding this purported need rests to a significant degree on her assessment of plaintiff's credibility. Because that assessment is tainted by various deficiencies, as discussed directly below, the ALJ's exclusion of plaintiff's purported need to lie down from the hypotheticals is also tainted.

## IV. ALJ'S CREDIBILITY ASSESSMENT

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. § 404.1529(a)-(c); Soc. Sec. R. 96–7p, 1996 WL 374186, at *1 n.1, *2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. R. 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, *4; *Jonson v. Colvin*, No. 12cv1742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, the ALJ summarized plaintiff's hearing testimony and statements she made in an 18 August 2011 consultative examination as follows:

> At the hearing, the claimant testitied that she has a pending worker's compensation case. She testified that she lives with her 12-year old child and her 25-year old special need's child (paranoid schizophrenia) who is dependent upon her. She reported that they live with her 70-year old mother in a one story home. She alleged that she is unable to work because of back pain that is at a 4/10 severity level on good days and at a 9/10 severity level on bad days. She also stated that she weighs 227 pounds, which is up from 193 pounds. She alleged that she is limited to sitting and standing for no more than 30 minutes and walking no more than two city[2] blocks. She stated that her pain is worse when out and she has to lie down to relieve pain.
>
> She testified that she is able to make beds, vacuum, and wash dishes on her good days. She also stated that she is able to go grocery shopping monthly with her children, drive four days a week to her son's school or across town, and go to church once a month. She further reported watching television, playing with her son's video games, and playing solita[ire]. On August 18, 2011, she reported being able to drive in and out of town and perform household chores such as cooking and cleaning. She acknowledged being able to lift about 10 to 20 pounds (Exhibit 8F).

Tr. 17-18 ¶ 5.

The ALJ then made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 18 ¶ 5. Plaintiff does not, of course, challenge this finding.

At the second step of the credibility assessment, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 18 ¶ 5. After reviewing the medical evidence, the ALJ explained the basis for her credibility determination:

> The above-summarized evidence indicates that, although the claimant complains of back pain, she also has a pending worker's compensation claimant and she is not motivated to return to work. Repeat physical examinations have not shown any significant abnormalities. She had good lumbar range of motion except some pain with lumbar extension and lateral bending. She had negative straight leg raise testing. Motor strength, reflexes, and sensation were intact. There were no neurological deficits. The claimant had a normal gait and station and could stand on her toes and bend to 70 degrees without difficulty. A cane or other assistive device has never prescribed. She reported marked improvement in her leg pain

---

[2] Plaintiff did not use "city" to describe "blocks" in her testimony. Tr. 54.

11

> after surgery. Only conservative treatment with medication has been recommended since surgery. Dr. Silver indicated that Ultram controlled her pain and did not report any adverse side effects of prescribed medication. Moreover, two orthopedists recommended light duty work (Exhibits 4F and 5F). She also was advised [] to [be more] active and lose weight. She acknowledged being able to lift up to 20 pounds. A spinal cord stimulator trial was removed because she found it "annoying" (Exhibit 23F).
>
> Furthermore, the claimant gave contradictory testimony regarding her functional abilities. She testified that she can walk two blocks but can stand for less than 30 minutes. She also stated that on a good day she is able to vacuum, wash dishes and make beds. Her activity level is not consistent with her allegations of debilitating symptoms and her contradictory statements further undermine her credibility.

Tr. 19 ¶ 5. Separately, after her summary of plaintiff's testimony, the ALJ found that plaintiff's "activities of daily living are inconsistent with her allegations of debilitating symptoms." Tr. 18 ¶ 5.

Among other challenges to the credibility assessment, plaintiff argues that the ALJ erred in finding that she lacked the motivation to work because of her workers' compensation claim. She testified at the hearing that she receives about $1,800 in monthly benefits pursuant to her claim. Tr. 36. In support of her argument, plaintiff cites to the statement in the 26 October 2012 report of an adult nurse practitioner that she is "motivated to return to work." Tr. 530.

The Commissioner's finding on workers' compensation is of questionable legality. Although the Fourth Circuit does not appear to have addressed the issue, it has been held that an ALJ may not infer lack of motivation from a claimant's receipt of workers' compensation benefits on the seemingly well-founded grounds that Congress contemplated that Social Security recipients could also receive workers' compensation benefits. *See, e.g., Hinton v. Massanari*, 13 Fed. Appx. 819, 820 n.1 (10th Cir. 2011); *Buchan v. Astrue*, No. 08-4099-JAR, 2009 WL 2176046, at *6 (D. Kan. 21 July 2009) (collecting cases); *but cf. Yoho v. Comm'r*, No. 98-1684, 168 F. 3d 484 (Table), 1998 WL 911719, at *2 (4th Cir. 31 Dec. 1998) (pre-*Hinton*) (affirming

12

district court ruling upholding ALJ decision in which ALJ found claimant lacked motivation to work because he was receiving Social Security benefits but without addressing finding on motivation).

Plaintiff contends that the ALJ gave undue weight to her activities of daily living, citing *Parker v. Astrue*, 664 F. Supp. 2d 544, 555 (D.S.C. 2009). She argues specifically that the ALJ erred in characterizing as "contradictory testimony regarding her functional abilities" her testimony "that she can walk two blocks but can stand for less than 30 minutes." Tr. 19 ¶ 5. She argues that two blocks can readily be walked within 30 minutes. The court agrees that to the extent the ALJ was signifying that two blocks cannot be walked in 30 minutes, the finding is erroneous. If some other meaning was intended, the ALJ failed to provide it.

Further, plaintiff is correct that the ALJ was less than accurate in summarizing her testimony regarding household chores as she did: "She also stated that on a good day she is able to vacuum, wash dishes and make beds." Tr. 19 ¶ 5. This summary omits limitations expressed in plaintiff's testimony—that she would "maybe" run the vacuum, that she would do so "across my floor," that she would wash only "a few dishes," and that she would fix "my own bed." Tr. 56.[3] The ALJ's summary thus overstated plaintiff's household cleaning activities.

---

[3] The pertinent testimony reads:

> Q . . . .Now, in terms of the household chores, tell her honor, if you will, about the cleaning of the house. Who takes care of that?
> A Basically, my mother and my daughter. I do, you know, a little stuff, like — like I say, on a good day, when I'm able to do something, then I do it, but if I'm not able to, then my mom and my daughter.
> Q And when you say you do a "little something," what are you talking about?
> A Well, I basically — *I would fix my own bed, and, you know, maybe run the vacuum across my floor. I can stand long enough to wash a few dishes,* but other than that, the majority of it, my mom and my daughter does.

Tr. 55-56 (emphasis added).

13

As noted, the ALJ also relied on recommendations by two orthopedists that plaintiff perform "light duty work," citing Exhibits 4F and 5F. Tr. 19 ¶ 5. Plaintiff does not challenge such reliance. The court, however, finds it troublesome.

Central to the court's concern is that the ALJ accorded these opinions controlling weight, thereby giving them a determinative role in her decision. Specifically, the ALJ states that she gave "controlling weight to the opinions of light duty work provided by the claimant's treating physicians because these assessments are consistent with the overall evidence." Tr. 20 ¶ 5. It is apparent from the ALJ's review of the medical evidence (Tr. 18 ¶ 5), as well as the exhibits she cited, that in her foregoing findings the ALJ is referring to the 9 September 2010 opinion of William L. Lestini, M.D. (Tr. 280) and 2 December 2010 opinion of T. Craig Derian, M.D. (Tr. 288).

Dr. Lestini opined that, assuming plaintiff did not obtain further surgery, she was "releasable with a permanent light duty restriction of no lifting over 20 pounds occasionally." Tr. 280. Dr. Derian opined that if plaintiff were attempting to return to work "I would recommend returning to working in a sedentary, light-duty type of job with no lifting greater than 20 lb., allow frequent position changes from sitting to standing to walking and to avoid those activities which may aggravate symptoms." Tr. 288.

One problem with the ALJ's reliance on these opinions is the absence of any definition by Dr. Lestini or Dr. Derian of the terms "light duty" and "sedentary, light-duty type of job" as used in their respective opinions. It is unclear whether these terms connote restrictions beyond those specifically identified. There is no indication that these terms are synonymous with "light work" under the Regulations, and the ALJ herself takes care to refer to their opinions concerning "light duty work," rather than "light work." *See* Tr. 20 ¶ 5. Notably, a medical form dated 30

14

December 2008 lists as restrictions for "sedentary/light" level work lifting 10 pounds, self-paced walking, and no carrying, and for "light" level work lifting 10 pounds, walking less than 6 hours per day, and slow carrying. Tr. 234. These standards, of course, are different from those for light work under the Regulations. The ALJ should have clarified the meaning of the terminology used by Drs. Lestini and Derian, especially in light of the controlling weight she gave their opinions. *See Rivera v. Astrue*, Civ. Act. No. CBD-12-1095, 2013 WL 4507081, at *9 (D. Md. 22 Aug. 2013) (holding that the ALJ erred by not addressing in a detailed, nonconclusory manner the inconsistency between "light duty work" as used in a physician's opinion to which he gave great weight and "light work" under the Regulations).

Another problem is that Dr. Derian was not a treating physician of plaintiff. He saw her only the one time on 2 December 2010 for an independent medical evaluation apparently for workers' compensation purposes: his report is entitled "INDEPENDENT MEDICAL EVALUATION/SECOND OPINION ON IMPAIRMENT RATING." Tr. 286 (capitalization original). To qualify as a treating physician, the physician must have or have had "an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. Only the opinions of treating physicians, or other treating sources, can be given controlling weight. *See id.* § 404.1527(c)(2); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). The ALJ therefore erred in giving Dr. Derian's opinion controlling weight.[4]

The ALJ's explanation for giving the opinions of Dr. Lestini and Derian controlling weight is also deficient. She did so "because these assessments are consistent with the overall evidence." Tr. 20 ¶ 5. As noted, the opinion of a treating source is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

---

[4] Dr. Lestini qualified as a treating physician, but only barely. He had seen plaintiff on only one prior occasion, on 13 July 2010, and that visit was for an independent medical examination ("IME") apparently for workers' compensation purposes which Dr. Lestini stated twice did not create a doctor-patient relationship. Tr. 284.

15

is not inconsistent with the other substantial evidence in [the] case." 20 C.F.R. § 404.1527(c)(2); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2-4. The ALJ made no finding that the opinions of Drs. Lestini and Derian are supported by medically acceptable clinical and laboratory diagnostic techniques. *See* Tr. 20 ¶ 5.

Given the flaw in the ALJ's decision at step five that requires remand, the court need not address whether the various deficiencies in the credibility assessment necessitate remand. It is apparent, though, that they need to be considered and avoided on remand.

## V.   ALJ'S RFC DETERMINATION

A claimant's RFC signifies the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is to be based on all the relevant evidence of record. *Id.*

Plaintiff challenges the ALJ's RFC determination on essentially the same grounds on which she challenges the ALJ's credibility determination. The same concerns addressed in the discussion of the credibility assessment therefore apply to the RFC assessment.

## VI.   CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 18) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 24) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation. In making this recommendation, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of the case, matters that are for the Commissioner to resolve.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 9 June 2015 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 26th day of May 2015.

James E. Gates
United States Magistrate Judge